UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NUMBER: 06-CIV-61327-HUCK/SIMONTON

| | | |
|---|---|---|
| RICHARD F. THOMPSON, | ) | |
| L. ALAN JACOBY, | ) | |
| individually and on behalf of | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JURY DEMANDED |
| v. | ) | |
| | ) | |
| SENDTEC, INC. f/k/a | ) | |
| RELATIONSERVE MEDIA, INC., | ) | |
| DANIELLE KARP, MANDEE | ) | |
| HELLER ADLER, | ) | |
| WARREN "PETE" MUSSER, | ) | |
| SCOTT YOUNG; | ) | |
| SCOTT HIRSCH; | ) | |
| ADAM C. WASSERMAN; | ) | |
| MICHAEL H. BRAUSER; | ) | |
| SHAWN MCNAMARA; | ) | |
| PAUL SOLTOFF; | ) | |
| ERIC OBECK; | ) | |
| DONALD GOULD, JR.; | ) | |
| RICHARD HILL; | ) | |
| BARRY HONIG; | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiffs Richard F. Thompson, and L. Alan Jacoby, for their Complaint against Defendants, SendTec, Inc. f/k/a Relationserve Media, Inc., Scott Young, Danielle Karp, Mandee Heller Adler, and Warren "Pete" Musser, Scott Young, Scott Hirsch; Adam C. Wasserman; Michael H. Brauser; Shawn McNamara; Paul Soltoff; Eric Obeck; Donald Gould, Jr., Richard Hill, and Barry Honig on their own behalf and on behalf of all others similarly situated, states and alleges as follows:

## NATURE OF THE CASE

1.     Plaintiffs are shareholders of SendTec, Inc., f/k/a Relationserve Media, Inc. ("Relationserve"), and bring this action for damages resulting from the Defendants' violations of federal and state laws. Plaintiffs Certifications, made pursuant to federal securities laws, have been filed with this Court and incorporated herein by reference.

2.     Relationserve Media, Inc. changed its name to SendTec, Inc. effective July 26, 2006, and they are one and the same entity and referred to herein as "Relationserve."

3.     Relationserve and its officers and directors violated 15 U.S.C.A. § 77l the Sections 11 and 12(2) of the Securities Act of 1933, 15 U.S.C.A. § 77l(a)(2); and Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated there under, 15 U.S.C.A. § 78 j(b) and 17 C.F.R. § 240.10b-5, respectively,  the Indiana Securities Act and the Florida Securities Act:

    a.     by selling securities through persons who were not registered as agents and/or broker/dealers with the Securities Exchange Commission, or the States of Florida or Indiana, and were not affiliated as an agent or representative of any broker/dealer.

    b.     by failing to disclose to purchasers of Relationserve Media, Inc. stock that they were selling securities of Relationserve stock through unregistered agents and broker/dealers was in violation of state and federal securities laws which caused a substantial contingent liability for claims of rescission by investors and exposing Relationserve to substantial legal fees, criminal and civil liability which would have a material adverse impact to the Relationserve's financial condition.

    c.     by failing to disclose that in July 2005, Relationserve Chief Executive Officer and Chief Operating Officer received evidence of accusations of

employee theft of data and employee kickbacks had been made and the matter was so material that CEO hired an outside attorney to investigate the matter.

d.    by failing to disclose that the financial statements beginning the third quarter of 2005 were false and misleading as the founder of Relationserve had directed that finance recognize income in the third quarter in violation of Generally Accepted Accounting Principles and violation of Sarbanes-Oxley. The invoices directed to be recorded either did not exist or were otherwise untraceable, cancelled, or were never shipped, with the exception of just a few.

e.    by failing to disclose that Director, Pete Musser has previously been sued by stockholders of two other corporations, SafeGuard and TyCom Ltd., for securities violations.

## JURISDICTION AND VENUE

4.    Plaintiffs brings this action pursuant to Sections 11 and 12(2) of the Securities Act of 1933, 15 U.S.C.A. § 77l(a)(2); Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated there under, 15 U.S.C.A. § 78 j(b) and 17 C.F.R. § 240.10b-5, respectively; the Indiana Securities Act, I.C. § 23-1-2 et seq.; and the Florida Securities Act.

5.    The jurisdiction of the Court arises under the Securities Act, the Securities Exchange Act, and 28 U.S.C. §§ 1331 and 1367.

6.    Venue in this District is proper under §27 of the Exchange Act, because the Relationserve's principal place of business is located in the Southern District of Florida, and because the Subscription Agreement states that the exclusive jurisdiction and venue for any action shall be the State or Federal Courts serving the State of Florida located in Broward County.

## PARTIES

7.     Plaintiff, Richard F. Thompson, is a resident of the state of Indiana and at all times relevant to this Amended Complaint resided at 2737 Wood Wind Way, Indianapolis, Indiana purchased 50,000 shares of Relationserve through Summit Financial Partners.

8.     Plaintiff, L. Alan Jacoby, is a resident of the state of Florida at all times relevant to this Amended Complaint purchased 10,000 shares on the open market.

9.     Defendant Relationserve Media, Inc., a Delaware corporation with a principal place of business located at 6700 North Andrews Avenue, Fort Lauderdale, Florida transacted business nationwide by selling shares of Relationserve.

10.     Defendant Danielle Karp was the President and Secretary of Relationserve. Danielle Karp signed one or more certifications per Sarbanes-Oxley Act filed with the SEC which omitted to state material facts.

11.     Defendant Mandee Heller Adler was the Chief Executive Officer of Relationserve. Adler signed one or more certifications per Sarbanes-Oxley Act filed with the SEC which omitted to state material facts.

12.     Defendant Warren "Pete" Musser became a director of Relationserve effective June 22, 2005 and authorized Relationserve officers and directors to file documents with the SEC which omitted to state material facts.  In addition, Mr. Musser has previously been sued by stockholders of two other corporations,

4

SafeGuard and TyCom Ltd., for securities violations.  This information is material and relevant, but was never disclosed to plaintiffs or disclosed in Securities and Exchange Commission filings.

13.     Defendant Scott Young was Chubasco's former President, Chief Financial Officer and sole director.  Scott Young signed one or more certifications per Sarbanes-Oxley Act filed with the SEC which omitted to state material facts.

14.     Defendant Scott Hirsch was a director, and Chief Operating Officer of Relationserve  Hirsch  authorized  Relationserve  officers  and  directors  to  file documents with the SEC which omitted to state material facts.

15.     Defendant Adam C. Wasserman in 2005 was Principal Accounting Officer. Wasserman signed one or more certifications per Sarbanes-Oxley Act filed with the SEC which omitted to state material facts.

16.     Defendant Michael H. Brauser was Chairman of the Board of Directors and former President/CEO, Marlin Capital Partners. Brauser signed one or more certifications per Sarbanes-Oxley Act filed with the SEC which omitted to state material facts.

17.     Defendant Richard Hill as founder of Omni Point, as predecessor of Relationserve.  In October 2005, Hill ordered and directed Relationserve to report income that had not been earned in violation of Sarbanes-Oxley Act.

18.     Defendant Barry Honig, a resident of Florida, is not registered with the Securities Exchange Commission or any state securities division. Barry Honig

sold RelationServe securities to Investors and received remuneration in violation of the securities laws.

19.    Defendant Shawn McNamara served as Principal Executive Officer of Sendtec, Inc. McNamara signed one or more certifications per Sarbanes-Oxley Act filed with the SEC which omitted to state material facts.

20.    Defendant Paul Soltoff served as Chief Executive Officer former Founder and CEO, SendTec, Inc. Soltoff signed one or more certifications per Sarbanes-Oxley Act filed with the SEC which omitted to state material facts.

21.    Defendant Eric Obeck served as President and former President, SendTec, Inc. Obeck signed one or more certifications per Sarbanes-Oxley Act filed with the SEC which omitted to state material facts.

22.    Defendant Donald Gould, Jr. served as Chief Financial Officer and former CFO, SendTec Inc. Gould signed one or more certifications per Sarbanes-Oxley Act filed with the SEC which omitted to state material facts.

23.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of them, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the

Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein. Each was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

24.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on NASDAQ and governed by the provisions of the federal securities laws, the defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendant's misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

25.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions there from, and

were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Relationserve, each of the defendants had access to the adverse undisclosed information about Relationserve business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Relationserve, and its business issued or adopted by the Company materially false and misleading.

26.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and are therefore primarily liable for the representations contained therein.

27.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Relationserve securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Relationserve's business, operations, management and

the intrinsic value of Relationserve' common stock; and (ii) caused plaintiffs and other members of the Class to purchase Relationserve's securities at artificially inflated prices.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

### CHUBASCO'S MERGER WITH RELATIONSERVE
### *RELATIONSERVE*

28.    On April 27, 2004 Chubasco Resources Corp ("Chubasco") was incorporated under the laws of the state of Nevada. On August 2nd, 2004 Chubasco formed a wholly subsidiary known as Chub Exploration Ltd. (CEL), a British Columbia corporation. CEL was formed to conduct Chubasco exploration business within the Province of British Columbia. Mr. Scott Young was president, chief financial officer, and sole director and promoter of Chubasco since its inception.

29.    Subsequent to April 30, 2005, Chubasco was presented with a business opportunity by the management of Relationserve, Inc. ("Relationserve") that upon evaluation proved more interesting than Chubasco's previous business plan. As a result, Chubasco suspended its efforts in relation to the exploration of the Chub mineral claims and entered into negotiations with Relationserve. After conducting its due diligence and concluding negotiations it was determined that a reverse acquisition of Relationserve was less speculative and contained greater benefits for the Chubasco than the unproven Chub mineral claims. In order to pursue this new business opportunity, Chubasco terminated its exploration activities and entered into an Agreement of Merger and Plan of Reorganization.

30.    Relationserve was incorporated on March 29, 2005 in the State of Delaware for the purpose of acquiring Internet marketing assets through acquisitions.

31.    On April 20, 2005, Relationserve commenced a private offering of up to $1,000,000 in Units.   Each Unit consisted of 50,000 shares of Relationserve's Common stock with warrants to purchase 25,000 shares of the Relationserve's Common Stock exercisable at $2.00 per share (the "Offering"). The private placement was originally to be for a maximum amount of $1,000,000, but was subsequently increased to a maximum of $1,625,000. In May and June 2005, the Company sold 1,625,000 shares of common stock, and granted 812,500 warrants to purchase 812,500 shares of common stock at an exercise price of $2.00 per share, for net proceeds of $1,495,027.

32.    On May 16, 2005 Relationserve executed agreements for the acquisition of Omni Point and Friendsand and issued 8,000,000 shares of Relationserve common stock.

33.    Relationserve's founders received 4,001,000 shares of Relationserve common stock and 6,000,000 warrants in connection with their efforts and for providing the bridge loan advances and negotiating the Company's initial acquisitions. The exercise price of the warrants issued to bridge loan holders is $0.25 per share.

34.    On May 24, 2005, Relationserve entered into an Independent Consulting Agreement ("Agreement") with Summit Financial Partners, LLC

("Summit").  Under the terms of the Agreement, Summit was to provide investor relations and similar services in exchange for the issuance to Summit of 1,050,000 shares of Common Stock.

35.    On June 8, 2004. Relationserve completed an offering of 3,210,000 shares of Common Stock at a price of $0.01 per share to a total of seven purchasers. The total amount Relationserve received from this offering was $32,100. Relationserve completed the offering pursuant to Regulation S of the Securities Act.

## CHUBASCO
### CEL was formed to conduct THE MERGER

36.    Subsequent to April 30, 2005, Chubasco was presented with a business opportunity by the management of Relationserve, Inc. ("Relationserve") that upon evaluation proved more interesting than its previous business plan.  In order to pursue this new business opportunity, Chubasco terminated its exploration activities and entered into an Agreement of Merger and Plan of Reorganization.

37.    On May 14, 2004, Chubasco issued 6,800,000 shares of Common Stock to Mr. Scott Young, the Chubasco's former President, Chief Financial Officer and sole director. Mr. Young acquired these shares at a price of $0.01 per share. Chubasco received $68,000 from this offering.

38.    On June 10, 2005, Chubasco's Board of Directors authorized the merger of a wholly-owned subsidiary Reland Acquisition, Inc. ("Reland"), with Relationserve.

39.    On June 13, 2005, a Certificate of Merger was filed with the Secretary of State of the State of Delaware in order to complete the merger, and on June 14,

11

2005 Chubasco changed its name to Relationserve, Inc. Following the merger, Relationserve continued its existence as the surviving corporation to such merger.

40.     On June 16, 2005 the National Association of Securities Dealers, Inc., ("NASD") was notified of the name change and Relationserve requested that their Common Stock be approved for trading under a new symbol.

41.     In connection with the merger Chubasco acquired all of the issued and outstanding capital stock of Relationserve in exchange for 13,126,000 shares of Chubasco common stock, and certain holders agreed to cancel 6,800,000 in outstanding shares of Relationserver common stock following the merger. As a result, Relationserve's former stockholders became Chubasco majority stockholders. Chubasco also converted warrants to purchase 6,550,000 shares of common stock of Relationserve into warrants to purchase 6,550,000 shares of Chubasco's common stock and Chubasco assumed a $700,000 promissory note payable by Relationserve.

## RELATIONSERVE OFFICERS AND DIRECTORS

42.     In June 2005, the officers and directors of Relationserve were Scott Young, Danielle Karp, Scott Hirsch, Mandee Heller Adler and Warren *"Pete"* Musser.

### *DANIELLE KARP*

43.     Danielle Karp, President, Secretary, earned a Bachelors of Arts Degree in accounting from Washington and Jefferson University and a MAIS with a Masters of Business Administration (MBA) concentration from The George Mason University. She obtained her CPA license in Virginia and is no longer practicing.

She previously was employed by KPMG Peat Marwick, Center for International Business Travel (CBIT), Naviant, Inc. and Omni Point.

### SCOTT HIRSCH

44.     Scott Hirsch, Chief Operating Officer of Relationserve, previously founded Naviant, Inc. which was sold to Equifax, Inc. in August 2002. Mr. Hirsch was also Chief Operating Officer of Naviant, Inc. Before founding Naviant, Mr. Hirsch was the Chief Marketing Officer at Seisint, Inc., a leading data information services. Mr. Hirsch was also formerly the Chairman and Chief Executive Officer of the Internet Video Group, an online entertainment business. Mr. Hirsch also served as the Vice President and Chief Operating Officer of Lens Express. Mr. Hirsch is a nationally recognized expert in Internet marketing and direct marketing and has been featured in many national publications.

### MANDEE HELLER ADLER

45.     Effective June 21, 2005, Mandee Heller Adler was appointed to serve as Relationserve's Chief Executive Officer. In such capacity, Ms. Adler served as Relationserve's principal executive officer.

46.     Ms. Adler was the founder and, since June 2003, was the principal of Heller Adler Consulting, a consulting firm providing financial and strategic consulting services to clients with from $45–$500 million in revenues. From October 2000 to June 2003, Ms. Adler was vice chairman, executive vice president and chief operating officer of Women's Financial Network, a national discount brokerage and wholly-owned subsidiary of Siebert Financial Corp. (*"Siebert"*).

47.     Prior thereto from December 1999, Ms. Adler co-founded and served as chief executive officer of HerDollar.com, a consulting firm that assisted financial institutions to attract and retain women customers, which was sold to Siebert in 2000. Ms. Adler has been an analyst in the Investment Banking Division of Goldman Sachs & Co. where she worked in both the Equity Capital Markets and Corporate Finance Groups. Ms. Adler earned a BSE degree from the Wharton School and a BA degree from the College of Arts and Sciences of the University of Pennsylvania and an MBA degree from Harvard University Graduate School of Business Administration.

### *WARREN "PETE" MUSSER*

48.     On June 21, 2005, Relationserve increased the size of its Board of Directors from one to two directors. In accordance with Relationserve by-laws for filling newly-created board vacancies, Relationserve Board of Directors appointed Warren "Pete" Musser to serve as a director, effective June 22, 2005.

49.     Mr. Musser is currently the managing director of The Musser Group and the chairman emeritus of Safeguard Scientifics, Inc. Mr. Musser is also director of Internet Capital Group, Inc., vice chairman and director of NutriSystems, Inc., vice chairman and director of the Eastern Technology Council, chairman and director of Economics PA, and vice president of development of Cradle of Liberty Council, Boy Scouts of America. Mr. Musser received a BS degree in Industrial Engineering from Lehigh University.

50.   Mr. Musser served as founder, chairman, and chief executive officer of Safeguard Scientifics, Inc. from 1953 through 2001, as chairman of Cambridge Tech Partners from 1992 through 2001 when it was acquired by Novell, Inc., as chairman of Telkonet, Inc. from 2003 through the present, as a board member of Health Advocate, Inc. from 2003 through the present, of Tycom Ltd. from 2000 through the present, of Internet Capital Group from 2000 through present, of Compucom Systems, Inc. from 1999 through 2004, of Coherent Communication Systems from 1993 through 1998, and as trustee of Brandywine Realty Trust from 1996 through 2002.

51.   Mr. Musser has previously been sued by stockholders of two other corporations, SafeGuard and TyCom Ltd., for securities violations.   This information is material and relevant, but was never disclosed to plaintiffs or disclosed in Securities and Exchange Commission filings.

## SALE OF RELATIONSERVE STOCK BY UNREGISTERED AGENTS

52.   On May 24, 2005, Relationserve entered into an Independent Consulting Agreement ("Agreement") with Summit Financial Partners, LLC ("Summit").   Under the terms of the Agreement, Summit was to provide investor relations and similar services in exchange for the issuance to Summit of 1,050,000 shares of Common Stock.

53.   As part of the Agreement between Summit and Relationserve, Summit was to also receive a seven percent (7%) fee for the sale of any shares of

Relationserve to investors. Relationserve stock was not registered and was not exempt from registration.

54.   Summit Financial Partners and Altavilla acted as authorized agents for Relationserve.

55.   Beginning in June 2005, Tony Altavilla, (Altavilla") of Summit Financial Partners, LLC of recommended that the Plaintiff Richard F. Thompson and other Class members purchase shares of Relationserve.

56.   Before investing Plaintiff Richard F. Thompson reviewed the public statements on the internet about Relationserve, listened to the sales pitch of Tony Altavilla and reviewed all document presented by Tony Altavilla.

57.   Plaintiff Richard F. Thompson purchased 50,000 Relationserve shares at $2.00 per share on June 28, 2005 through Summit Financial.

58.   In order to complete the purchase of Relationserve shares by the Plaintiff Richard F. Thompson, Altavilla negotiated the final purchase price between the parties, and facilitated wire transfers of money from the Plaintiffs to Relationserve.

59.   Altavilla also assured that the stock certificates would be delivered by Relationserve to Plaintiff and Class members via the mails.

60.   Altavilla received a seven percent (7%) commission or fee for his role in negotiating, recommending, touting, selling and/or facilitating the transaction between Plaintiffs and Class members, as the buyers of the Relationserve stock, and the sellers of the stock.

61.     Relationserve reported to the Securities Exchange Commission that on June 30, 2005 it completed a private offering of Units to "accredited investors" as that term is defined in Regulation D of the Securities Act, with each Unit consisting of 50,000 shares of its common stock, $0.0001 par value per share ("Common Stock"), and a three-year warrant to purchase 25,000 shares of Common Stock at $3.50 per share (the "Offering"). Relationserve received and accepted $2,000,000 of subscriptions in the Offering. The Units were issued in reliance on an exemption from registration provided under Regulation D of the Securities Act and are restricted securities as defined by the Securities Act.

62.     At the time Altavilla touted, recommended, negotiated, sold, and/or facilitated the sale of Relationserve stock to the Plaintiffs Richard F. Thompson and Stuart Feick of Florida, Altavilla was not registered as an agent and/or broker/dealer with the Securities Exchange Commission or the States of Florida or Indiana and was not affiliated as an agent or representative of any broker/dealer.

63.     Relationserve stock was not registered and was not exempt from registration.

64.     At the time Altavilla recommended, touted, encouraged and/or sold the Plaintiff Richard F. Thompson and Class members to purchase Relationserve, and while facilitating Richard F. Thompson and Class' purchase of these shares, Relationserve stock was not registered with the State of Indiana or properly exempt from registration in the State of Indiana.

17

65.     Relationserve sold stock by means of Altavilla and Summit Financial Partners to the Plaintiffs Richard F. Thompson in Indiana.

66.     Relationserve sold 50,000 shares by means of Altavilla and Summit Financial Partners to the Stuart Feick, a resident of Florida.

67.     Relationserve sold shares by means of Barry Honig to residents of Florida including 50,000 to Stuart Feick.

68.     Relationserve and its officers and directors knew and failed to report in its prospectus and filings with the Securities Exchange Commission that Barry Honig, Summit Financial Partners, LLC, and Altavilla were not registered with the Securities Exchange Commission or the state securities divisions of Indiana or Florida.

69.     Relationserve and its officers and directors knew and failed to report to the investing public that Relationserve and its officers and directors had violated the state and federal securities law which would require Relationserve is offer rescission to all investors.

70.     Relationserve and its officers and directors knew and omitted to disclose that rescission of stock offerings would have a material adverse financial impact to Relationserve, and cause Relationserve to lose its capital.

71.     Relationserve and its officers and directors knew and omitted that Mr. Musser has previously been sued by stockholders of two other corporations, SafeGuard and TyCom Ltd., for securities violations.  This information is material

and relevant, but was never disclosed to plaintiffs or disclosed in Securities and Exchange Commission filings.

## SECURITIES FILINGS

72.    On June 14, 2005, Scott Young, Principal Executive Officer of Chubasco Resources Corp. as required by Sarbanes-Oxley Act signed and filed Form10SB which omitted to state material facts as set forth above.

73.    On June 13, 2005, Danielle Karp, President and Secretary of Relationserve as required by Sarbanes-Oxley Act signed and filed Form 8K which omitted to state material facts omitted to state material facts as set forth above.

74.    On June 27, 2005, Danielle Karp, President and Secretary, as required by Sarbanes-Oxley Act signed and filed Form 8K with SEC which omitted to state material facts as set forth above.

75.    On June 30, 2005, Danielle Karp, President and Secretary, of Relationserve as required by Sarbanes-Oxley Act signed and filed Form 8K with SEC which omitted to state material facts as set forth above.

76.    In July, August and September, 2005, Mandee Heller Adler, Chief Executive Officer as required by Sarbanes-Oxley Act signed and filed several Form 8K's with SEC which omitted to state material facts as set forth above.

77.    Relationserve filed Form 10-QSB on August 18, 2005 which contained certifications pursuant to sections 302 and 906 of the Sarbanes Oxley Act of 2002 and was signed by Defendants Adler, and Wasserman.  The certifications stated in pertinent part:

a.  I have reviewed this quarterly report on Form 10-QSB of Relationserve Media, Inc.;

b.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

c.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

d.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    (1)  designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    (2)  evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    (3)  disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

e.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(1)     all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(2)     any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

and

In connection with the Quarterly Report of Relationserve Media, Inc. (the *"Company"*) on Form 10-QSB for the quarterly period ended June 30, 2005, as filed with the Securities and Exchange Commission on the date hereof (the *"Report"*),I, certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that, to my knowledge:

a.      the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

b.      the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

78.     These certifications were false and misleading when made because the Company omitted to state material facts, as set forth above.

79.     Further, the financial statements included in the Form 10QSB filed on August 18, 2005 were false and misleading because Relationserve in violation of Sarbanes-Oxley Act failed to report that Relationserve and its officers and directors had violated the state and federal securities law which would require Relationserve is offer rescission to all investors and had not disclosed theft and kickbacks by employees of Relationserve.

80.     On November 18, 2005, Danielle Karp, Chief Executive Officer and Adam Wasserman as Principal Financial and Accounting Officer signed

certifications pursuant to sections 302 and 906 of the Sarbanes Oxley Act of 2002 and filed Form 10QSB with SEC.  The Form 10QSB and certifications omitted to state material facts including failing to report the public that Relationserve and its officers and directors had violated the state and federal securities law which would require Relationserve is offer rescission to all investors; and failing to report employee theft and kickbacks.

81.    Further the financial statements included in the Form 10QSB filed on November 18, 2005 were false and misleading because Relationserve in violation of Sarbanes-Oxley Act reported income that had not been earned. The information has been memorialized in an affidavit by the former Chief Operating Officer of Relationserve, Ohad Jehassi, which states, in pertinent part, as follows:

1.    In July 2005, RELATIONSERVE and I entered into an Employment Agreement, ("Agreement"), whereby I was hired as Defendant's, RELATIONSERVE, Chief Operating Officer ("COO").

2.    Pursuant to the Agreement, my Initial Term of employment as COO was from June 2005 through June 2008.

3.    On or about June 30, 2005, RELATIONSERVE became a public company registered on the NASDAQ stock exchange.

4.    In July 2005, accusations of employee theft of data and employee kickbacks were made, and the CEO hired an outside attorney to investigate the matter.

5.    In August 2005, I was told that I would relinquish my role as COO and become president of a newly acquired subsidiary, friendsand.com, and that I would continue to assist the CEO of RELATIONSERVE.

6.    On or about October 2005, I discovered a memorandum from one of RELATIONSERVE's founders instructing RELATIONSERVE's finance department only to recognize specific revenue, in violation of company operating procedures, and in violation of applicable law, including but not limited to the Sarbanes-Oxley Act, ("SOX"), and generally accepted accounting principles ("GAAP"). The memorandum was a single-spaced

document from Richard Hill and addressed to Daniel Merchant, who worked in finance.

7.     When I investigated the transactions in the document upon which Mr. Hill had directed Mr. Merchant to recognize the revenue, I found that the invoices on the memorandum either did not exist or were otherwise untraceable, cancelled, or were never shipped, with the exception of just a few.

82.     In November, 2005, Danielle Karp, President of Relationserve as required by Sarbanes-Oxley Act signed and filed several Form 8K's with SEC which omitted to state material facts stated above.

83.     On December 5, 2005, Shawn McNamara, Sr. Vice President of Relationserve as required by Sarbanes-Oxley Act signed and filed several Form 8K's with SEC which omitted to state material facts stated above.

84.     On December 30, 2005 Shawn McNamara, Chief Executive Officer of Relationserve as required by Sarbanes-Oxley Act signed and filed a Form 8-A, Registration Statement, with SEC which omitted to state material facts stated above.

85.     On February 6, 2006, Shawn McNamara, Sr. Vice President of Relationserve as required by Sarbanes-Oxley Act signed and filed Form 8K with SEC which omitted to state material facts stated above.

86.     On February 9, 2006, Paul Soltoff, Chief Executive Officer of Relationserve as required by Sarbanes-Oxley Act signed and filed a Form 8K with SEC which omitted to state material facts stated above.

87.    In February 2006, Donald Gould Jr, Chief Financial Officer of Relationserve as required by Sarbanes-Oxley Act signed and filed several Form 8K's with SEC which omitted to state material facts stated above.

88.    On March 3, 2006, Richard F. Thompson, Thompson Family Wealth Management, Dwight Thompson, Greg Thompson and Parabolic Investment Fund, L.P. ("Thompsons") commenced an action in the State Court of Indiana, County of Hamilton, against Anthony D. Altavilla, Summit Financial Partners, LLC, RelationServe Media, Inc. and others. As against Relationserve, Thompsons sought rescission of the RelationServe common stock they purchased in July 2005, alleging that the shares they received were not registered as required under Indiana Law. This information was not reported by Relationserve to the public or its investors until May 1, 2006 in Amendment No. 1 to Form SB-2.

89.    Shortly after March 3, 2006, Realtionserve and all its officers, directors and their attorneys, Olshan Grundman Frome Rosenzweig & Wolosky LLP, knew that Thompsons had filed suit alleging violations of the securities laws which would have a material adverse financial impact to Relationserve. Realtionserve and their attorneys, failed to disclose, Olshan Grundman Frome Rosenzweig & Wolosky LLP, to the public or investors until May 1, 2006 even though they knew that Altavilla and Summit admitted in a pleading that they were not a registered broker dealer or agent and also knew the lawsuit would have a material adverse financial impact to Relationserve.

90.    On March 20, 2006, Paul Soltoff, Director; Adam Wasserman, Principal Financial Officer and Principal Accounting Officer; Shawn McNamara, Senior Vice President as Principal Executive Officer; Michael Brauser, Chairman of the Board of Directors, all signed certifications pursuant to sections 302 and 906 of the Sarbanes Oxley Act of 2002 and filed two documents with the SEC; an Annual Report -- Small Business and a Registration of Securities by a Small-Business Issuer. Both documents and the certifications omitted to state material facts as set forth above including failure to disclose the lawsuit filed by the Thompsons on March 3, 2006 as this lawsuit was certainly material.

91.    Further the financial statements included in the Forms SB-2 and 10KSB filed on March 20, 2006, were false and misleading because Relationserve in violation of Sarbanes-Oxley Act reported income that had not been earned. The information is reported in a Whistleblower complaint filed against Relationserve in Florida State Court by former Relationserve officer, Ohad Jehassi, who was fired for reporting this information to officers and directors of Relationserve.

92.    The filings with the Securities Exchange Commission, registration statements and prospectus and amendments thereto listed above were each materially false and misleading because they failed to disclose the following material adverse facts which were then known to Defendants or recklessly disregarded by them:

a.    by selling securities through persons who were not registered as agents and/or broker/dealers with the Securities Exchange Commission, or the States of Florida or Indiana, and were not affiliated as an agent or representative of any broker/dealer.

b.    by failing to disclose to purchasers of Relationserve Media, Inc. stock that they were selling securities of Relationserve stock through unregistered agents and broker/dealers was in violation of state and federal securities laws which caused a substantial contingent liability for claims of rescission by investors and exposing Relationserve to substantial legal fees, criminal and civil liability which would have a material adverse impact to the Relationserve's financial condition.

c.    by failing to disclose that in July 2005, Relationserve Chief Executive Officer and Chief Operating Officer received evidence of accusations of employee theft of data and employee kickbacks had been made  and the matter was so material that CEO hired an outside attorney to investigate the matter.

d.    by failing to disclose that the financial statements beginning the third quarter of 2005 were false and misleading as the founder of Relationserve had directed that finance recognize income in the third quarter in violation of Generally Accepted Accounting Principles and violation of Sarbanes-Oxley. The invoices directed to be recorded either did not exist or were otherwise untraceable, cancelled, or were never shipped, with the exception of just a few.

e.    by failing to disclose that Director, Pete Musser has previously been sued by stockholders of two other corporations, SafeGuard and TyCom Ltd., for securities violations.

93.    The statements and the filings with the Securities Exchange Commission, the prospectus, registration statement and amendments were caused, approved, acquiesced in or ratified by the all defendants.

94.    Since purchasing their shares of Relationserve the values of Plaintiffs' shares have declined and as a result of their various purchases of Relationserve stock, Plaintiffs and the class members have sustained significant losses.

95.    Defendants engaged in the acts and transactions herein alleged by use of the mails, other means and instrumentalities of interstate commerce.

96.     In committing or causing the acts and transactions herein alleged, defendants employed a device, scheme or artifice to defraud; made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and engaged in acts, practices and courses of business which operated as a fraud or deceit; all in connection with the purchase and sale of securities, to wit, Relationserve stock.

97.     Plaintiffs Richard F. Thompson did not discover the omissions set forth above until May 01, 2006. Plaintiffs, L. Alan Jacoby and Class Members did not discover the omissions any earlier than May 01, 2006.

## CLASS ALLEGATIONS

98.     Plaintiffs, Richard Thompson brings this case on his own behalf, and on behalf of a proposed Plaintiffs Class described as follows:

99.     All persons who purchased Relationserve shares during the period beginning May 24, 2005 to August 28, 2006. Excluded from the Class are all defendants, officers, directors and employees of Relationserve, Anthony Altavilla, Leslie Altavilla Trust and all judges who may ever have adjudicatory responsibility over this case and their families.

100.    Plaintiffs seek certification of this nationwide class based on Federal Rule of Civil Procedure 23(b)(3).

101.    The Class is so numerous that joinder of all Class members would be impracticable. Nevertheless, all of the records necessary to identify all Class

members and to calculate their recoveries are either located at or readily accessible

to Defendant, making management of this case superior to individual actions.

102.    There are questions of law and fact common to the claims of all Class

members, which common questions predominate over questions solely affecting

individual members of the Class.  Common questions, include but are not limited to:

a.    Whether Defendants violated the Securities Act of 1933;

b.    Whether Defendants violated Section 10(b) of the Securities Exchange
Act of 1934 and Rule 10b-5 promulgated there under;

c.    Whether Defendants violated the Indiana Securities Act;

d.     Whether Defendants violated the Florida Securities Act;

e.    Whether Defendants violated Indiana Code 35-43-5-3 by knowingly,
intentionally, and with intent to defraud, misrepresenting and/or
omitting material facts.

f.    Whether Defendants' omissions constitute fraud;

g.    Whether Plaintiffs are entitled to relief for such violations under the
Securities Act of 1933, Section 10(b) of the Securities Exchange Act of
1934, Rule 10b-5, Indiana Securities Act, the Florida Securities Act or
common law fraud; and

h.    The appropriate type and measure of relief.

103.    Plaintiffs' claims are similar to those of the proposed Class members

because they all arise from the same operative facts and are based on the same legal

theories.

104.    Plaintiffs' claims are typical of the claims of the Class members they

seek to represent and the Plaintiffs has no interests that conflict with or are

antagonistic to the claim of the Class.

105.   Plaintiffs will fairly and adequately represent and protect the interests of the Class members and he has retained competent counsel experienced in class action litigation. Plaintiffs are members of the proposed Class, and neither the Plaintiffs nor Plaintiffs' counsel has any conflict of interest that will interfere with their vigorous pursuit of this case.

106.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy since the membership of the proposed Class is so numerous and geographically widespread that joinder of all members is impracticable. Further, the expense and burden of any non-class litigation will make it practically impossible for Plaintiffs or other persons to pursue this action individually. There will be no difficulty in the management of this case as a class action.

## UNDISCLOSED ADVERSE FACTS

107.   The market for Relationserve's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Relationserve's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Relationserve common stock relying upon the integrity of the market price of Relationserve's common stock and market information relating to Relationserve, and have been damaged thereby.

108.   During the Class Period, defendants materially misled the investing public, thereby inflating the price of Relationserve's common stock, by publicly

29

issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

109.   At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the loss sustained.

110.   Each defendant is liable for (i) making false statements, or (ii) failing to disclose adverse facts known to him about Relationserve. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Relationserve common stock was a success, as it (i) deceived the investing public regarding Relationserve's prospects and business; (ii) artificially inflated the prices of Relationserve common stock; and (iii) caused plaintiff and other members of the Class to purchase Relationserve common stock at inflated prices

111.   The public statements set forth above, and each of the financial statements contained in the reports filed with the SEC, were materially false and misleading; and omitted to set forth facts necessary to make such statements not misleading, for each of the following reasons:

   a.    by selling securities through persons who were not registered as agents and/or broker/dealers with the Securities Exchange Commission, or the States of Florida or Indiana, and were not affiliated as an agent or representative of any broker/dealer.

b. by failing to disclose to purchasers of Relationserve Media, Inc. stock that they were selling securities of Relationserve stock through unregistered agents and broker/dealers was in violation of state and federal securities laws which caused a substantial contingent liability for claims of rescission by investors and exposing Relationserve to substantial legal fees, criminal and civil liability which would have a material adverse impact to the Relationserve's financial condition.

c. by failing to disclose that in July 2005, Relationserve Chief Executive Officer and Chief Operating Officer received evidence of accusations of employee theft of data and employee kickbacks had been made  and the matter was so material that CEO hired an outside attorney to investigate the matter.

d. by failing to disclose that the financial statements beginning the third quarter of 2005 were false and misleading as the founder of Relationserve had directed that finance recognize income in the third quarter in violation of Generally Accepted Accounting Principles and violation of Sarbanes-Oxley. The invoices directed to be recorded either did not exist or were otherwise untraceable, cancelled, or were never shipped, with the exception of just a few.

e. by failing to disclose that Director, Pete Musser has previously been sued by stockholders of two other corporations, SafeGuard and TyCom Ltd., for securities violations.

## SCIENTER ALLEGATIONS

112. As alleged herein, defendants acted with scienter in that defendants knew that the Company's public documents and statements issued or disseminated by or in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts

31

regarding Relationserve and its business practices, their control over and/or receipt of Relationserve allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Relationserve, were active and culpable participants in the fraudulent scheme alleged herein. Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

113.   The Individual Defendants engaged in such a scheme to inflate the price of Relationserve securities in order to protect and enhance their executive positions and the substantial compensation and prestige they obtained thereby.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

114.   At all relevant times, the market for Relationserve securities was an efficient market for the following reasons, among others:

a.    Relationserve's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b.    As a regulated issuer, Relationserve filed periodic public reports with the SEC; and Relationserve regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide ranging public disclosures, such as communications with the financial press and other similar reporting services.

115.   As a result of the foregoing, the market for Relationserve's securities promptly digested current information regarding Relationserve from all publicly available sources and reflected such information in Relationserve's stock price. Under these circumstances, all  purchasers of Relationserve securities during the Class Period suffered similar injury through their purchase of Relationserve securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

116.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this amended complaint.

117.   Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Relationserve who knew that those statements were false when made.

## CAUSES OF ACTION
## COUNT I
## Filing of False Registration Statement

118.   Plaintiffs incorporate all of the foregoing allegations as if set forth herein verbatim.

119.   The filings with the Securities Exchange Commission, including the registration statements, prospectus, and amendments thereto omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading in at least the following particulars:

a.   by selling securities through persons who were not registered as agents and/or broker/dealers with the Securities Exchange Commission, or the States of Florida or Indiana, and were not affiliated as an agent or representative of any broker/dealer.

b.   by failing to disclose to purchasers of Relationserve Media, Inc. stock that they were selling securities of Relationserve stock through unregistered agents and broker/dealers was in violation of state and federal securities laws which caused a substantial contingent liability for claims of rescission by investors and exposing Relationserve to substantial legal fees, criminal and civil liability which would have a material adverse impact to the Relationserve's financial condition.

c.   by failing to disclose that in July 2005, Relationserve Chief Executive Officer and Chief Operating Officer received evidence of accusations of employee theft of data and employee kickbacks had been made  and the matter was so material that CEO hired an outside attorney to investigate the matter.

d.   by failing to disclose that the financial statements beginning the third quarter of 2005 were false and misleading as the founder of Relationserve had directed that finance recognize income in the third quarter in violation of Generally Accepted Accounting Principles and violation of Sarbanes-Oxley. The invoices directed to be recorded either did not exist or were otherwise untraceable, cancelled, or were never shipped, with the exception of just a few.

e.    by failing to disclose that Director, Pete Musser has previously been sued by stockholders of two other corporations, SafeGuard and TyCom Ltd., for securities violations.

120.   Every individual Defendant signed the filing to the Securities Exchange Commission and/or is a controlling person under the Securities Act of 1933.

121.   Relationserve and the individual Defendants violated Section 11 of the Securities Act of 1933, 15 U.S.C.A. § 77l(a), and are liable to the Plaintiffs and Class Members for  damages, prejudgment interest, and reasonable costs associated with this action and all further just and proper relief.

WHEREFORE, Plaintiffs and Class Members pray for damages or for rescission, lost interest of eight percent (8%) per year from the date of their purchases of shares of Relationserve Media, Inc. through entry of judgment, and reasonable costs associated with this action and all further just and proper relief.

## <u>COUNT II</u>
### <u>Violation of Securities Act of 1933</u>

122.   Plaintiffs incorporate all of the foregoing allegations as if set forth herein verbatim.

123.   The Defendants, including the Individual Defendants whom are controlling persons, offered and sold the shares of Relationserve in violation of 15 U.S.C.A. § 77l and are liable for the consideration paid, prejudgment interest, and reasonable costs associated with this action and all further just and proper relief.

WHEREFORE, Plaintiffs and Class Members pray damages or for rescission,

lost interest of eight percent (8%) per year from the date of their purchases of Relationserve Media, Inc. through entry of judgment, and reasonable costs associated with this action and all further just and proper relief.

## COUNT III
## Violation of Securities Exchange Act of 1934, Rule 10b-5

124.   Plaintiffs incorporate all of the foregoing allegations as if set forth herein verbatim.

125.   As stated herein, the registration statement and prospectus contained untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

126.   It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly (1) to employ any device, scheme, or artifice to defraud, or (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

127.   The Defendants, including the Individual Defendants, whom are controlling persons, offered and sold the shares of Relationserve in violation of 15 U.S.C.A. § 77q and Rule 10b-5 and are liable for the consideration paid,

prejudgment interest, and reasonable costs associated with this action and all further just and proper relief.

WHEREFORE, Plaintiffs and Class Members pray for damages or for rescission, lost interest of eight percent (8%) per year from the date of their purchases of Relationserve through entry of judgment, and reasonable costs associated with this action and all further just and proper relief.

<u>COUNT IV</u>
<u>Violation Of Section 20(a) Of The Exchange Act</u>
<u>Against the Individual Defendants</u>

128. Plaintiffs incorporate all of the foregoing allegations as if set forth herein verbatim.

129. The Individual Defendants acted as controlling persons of Relationserve within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued

and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

130.   In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

131.   As set forth above, Relationserve and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

WHEREFORE, Plaintiffs and Class Members pray for damages or for rescission, lost interest of eight percent (8%) per year from the date of their purchases of Relationserve through entry of judgment, and reasonable costs associated with this action and all further just and proper relief.

## COUNT V
### Sale of Relationserve Securities by Unregistered
### Broker/Dealer or Agent Violation of Florida Securities Act

132.   Plaintiffs incorporate all of the foregoing allegations as if set forth herein verbatim.

133.    The Defendants, including the Individual Defendants, violated F.S.A. § 517.301

134.    Relationserve sold securities to Plaintiffs and the Class through Broker Dealers and Agents and paid these Broker Dealers and Agents commissions even though they were not registered with the State of Florida, all in violation of F.S.A. § 517.12 and F.S.A. § 517.061.

135.    Each Defendant personally participated or aided in making the sales to Plaintiffs and the Class, and pursuant to F.S.A. § 517.211 each Defendant is jointly and severally liable to the Plaintiffs and Class Member for rescission, if the purchaser still owns the security, or for damages, if the purchaser has sold the security.

WHEREFORE, Plaintiffs and Class Members pray for damages or for rescission, lost interest of eight percent (8%) per year from the date of their purchases of shares of Relationserve through entry of judgment, attorney fees and reasonable costs associated with this action and all further just and proper relief.

### COUNT VI
#### Sale of Relationserve Securities by Unregistered
#### Broker/Dealer or Agent Violation of Indiana Securities Act

136.    Plaintiffs incorporate all of the foregoing allegations as if set forth herein verbatim.

137.    Pursuant to the Indiana Securities Act, IC 23-2-1-8, it is unlawful for any person to transact business in this state as either a broker/dealer, agent or

investment advisor unless that individual is registered under the Indiana Securities Act.

138.   Summit Financial Partners and Altavilla were not registered as broker/dealers or agents as required by the Indiana Securities Act in order to offer or sell securities.

139.   Summit Financial Partners and Altavilla acted as broker dealers, agents and investment advisors in relation to Relationserve Media, Inc. in violation of the Indiana Securities Act, when selling Relationserve shares to Plaintiffs and the Class.

140.   The Defendants, including the Individual Defendants are liable to Plaintiffs and the Class Members for violation of the Indiana Securities Act and Plaintiffs and Class Members are entitled to the remedies provided under Indiana Code § 23-2-1-19.

WHEREFORE, Plaintiffs and Class Members pray for rescission, lost interest of eight percent (8%) per year from the date of their purchases of Relationserve Media, Inc. through entry of judgment, reasonable costs and attorneys fees associated with this action and all further just and proper relief.

## COUNT VII
## Sale of Unregistered, Non-Exempt Securities

141.   Plaintiffs incorporate all of the foregoing allegations as if set forth herein verbatim.

142.   Pursuant to the Indiana Securities Act, I.C. 23-2 et. seq., all securities sold to Indiana residents, such as the Plaintiffs and the Class members, are

required to be either registered with the state of Indiana or properly exempt from registration.   The sale of a security in Indiana which is unregistered and non-exempt is unlawful.

143.   The shares of Relationserve Media, Inc. sold by Relationserve Media, Inc. to Plaintiffs and Class were not registered under IC 23-2-1-3 and are not exempt from registration as required by IC 23-2-1-2.

144.   The Defendants, including the Individual Defendants are liable to Plaintiffs and the Class Members for violation of the Indiana Securities Act and Plaintiffs and Class Members are entitled to the remedies provided under Indiana Code § 23-2-1-19.

WHEREFORE, Plaintiffs and Class Members pray for rescission of their Relationserve securities purchases, return of their principal investment, lost interest of eight percent (8%) per year from the date the securities were purchased through entry of judgment, reasonable costs and attorneys fees associated with this action and all further just and proper relief.

## COUNT VIII
### Violations of the Indiana Securities Act – Anti-Fraud Provisions

145.   Plaintiffs incorporate all of the foregoing allegations as if set forth herein verbatim.

146.   Pursuant to Indiana Code 23-2-1-12, it was unlawful for Defendants in connection with the offer, sale or purchase of any security, either directly or indirectly to employ any device, scheme or artifice to defraud, or to make material misrepresentations or material omissions in connection with any offer, sale or

purchase of a security or to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

147.   Defendant Relationserve violated the Indiana Securities Act by virtue of the acts set out herein including, but not limited to the following:

a.   by selling securities through persons who were not registered as agents and/or broker/dealers with the Securities Exchange Commission, or the States of Florida or Indiana, and were not affiliated as an agent or representative of any broker/dealer.

b.   by failing to disclose to purchasers of Relationserve Media, Inc. stock that they were selling securities of Relationserve stock through unregistered agents and broker/dealers was in violation of state and federal securities laws which caused a substantial contingent liability for claims of rescission by investors and exposing Relationserve to substantial legal fees, criminal and civil liability which would have a material adverse impact to the Relationserve's financial condition.

c.   by failing to disclose that in July 2005, Relationserve Chief Executive Officer and Chief Operating Officer received evidence of accusations of employee theft of data and employee kickbacks had been made  and the matter was so material that CEO hired an outside attorney to investigate the matter.

d.   by failing to disclose that the financial statements beginning the third quarter of 2005 were false and misleading as the founder of Relationserve had directed that finance recognize income in the third quarter in violation of Generally Accepted Accounting Principles and violation of Sarbanes-Oxley. The invoices directed to be recorded either did not exist or were otherwise untraceable, cancelled, or were never shipped, with the exception of just a few.

e.   by failing to disclose that Director, Pete Musser has previously been sued by stockholders of two other corporations, SafeGuard and TyCom Ltd., for securities violations.

WHEREFORE, Plaintiffs and Class Members are entitled to the civil remedies provided under Indiana Code § 23-2-1-19 and Plaintiffs request that they be awarded rescission, lost interest of eight percent (8%) per year from the date the

securities were purchased through entry of judgment, reasonable costs and attorneys fees and all further just and proper relief.

## COUNT IX
### Deception

148.   Plaintiffs incorporate all of the foregoing allegations as if set forth herein verbatim.

149.   The Defendants, including the Individual Defendants, committed deception in the sale of Relationserve Media, Inc securities to Plaintiffs and Class Members in violation of Indiana Code 35-43-5-3 by knowingly, intentionally, and with intent to defraud, misrepresenting and/or omitting one or more of the following facts:

    a.     by selling securities through persons who were not registered as agents and/or broker/dealers with the Securities Exchange Commission, or the States of Florida or Indiana, and were not affiliated as an agent or representative of any broker/dealer.

    b.     by failing to disclose to purchasers of Relationserve Media, Inc. stock that they were selling securities of Relationserve stock through unregistered agents and broker/dealers was in violation of state and federal securities laws which caused a substantial contingent liability for claims of rescission by investors and exposing Relationserve to substantial legal fees, criminal and civil liability which would have a material adverse impact to the Relationserve's financial condition.

    c.     by failing to disclose that in July 2005, Relationserve Chief Executive Officer and Chief Operating Officer received evidence of accusations of employee theft of data and employee kickbacks had been made  and the matter was so material that CEO hired an outside attorney to investigate the matter.

    d.     by failing to disclose that the financial statements beginning the third quarter of 2005 were false and misleading as the founder of Relationserve had directed that finance recognize income in the third quarter in violation of Generally Accepted Accounting Principles and

violation of Sarbanes-Oxley. The invoices directed to be recorded either did not exist or were otherwise untraceable, cancelled, or were never shipped, with the exception of just a few.

e.   by failing to disclose that Director, Pete Musser has previously been sued by stockholders of two other corporations, SafeGuard and TyCom Ltd., for securities violations.

150.   As a result of this deceptive conduct, Plaintiffs and Class Members suffered substantial damages.

WHEREFORE, Plaintiffs and Class Members demand judgment in the amount of their compensatory damages, for treble damages pursuant to Indiana Code 34-24-3-1, interest, costs and reasonable attorney's fees and all other just and proper relief.

## COUNT X
## Fraud

151.   Plaintiffs incorporate all of the foregoing allegations as if set forth herein verbatim.

152.   The Defendants, including the Individual Defendants committed common law fraud against Plaintiffs and Class Members.

WHEREFORE, Plaintiffs and Class Members demand judgment in the amount of their compensatory damages, punitive damages and all other just and proper relief.

## DEMAND FOR TRIAL BY JURY

Plaintiffs, by Counsel, respectfully demand a trial by jury.

Respectfully submitted,

FRIEDMAN, ROSENWASSER & GOLDBAUM, P.A.
*Attorneys for Plaintiff*
5355 Town Center Road, #801
Boca Raton, FL  33486
Tel.: 561.395.5511
Fax.: 561.368.9274


Date: <u>Nov. 13, 2006</u>　　　By: 　<u>/s/ Keith A. Goldbaum</u>
　　　　　　　　　　　　　　　KEITH A. GOLDBAUM, ESQUIRE

　　　　　　　　　　　　　　　Irwin B. Levin, #8786-49
　　　　　　　　　　　　　　　Richard N. Bell , #2669-49
　　　　　　　　　　　　　　　Jeff Gibson, #22362-49
　　　　　　　　　　　　　　　COHEN & MALAD, LLP
　　　　　　　　　　　　　　　One Indiana Square
　　　　　　　　　　　　　　　Suite 1400
　　　　　　　　　　　　　　　Indianapolis, Indiana 46204
　　　　　　　　　　　　　　　(317) 636-6481 (DD)
　　　　　　　　　　　　　　　(317) 636-2593 (fax)
　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY  that on <u>November 13, 2006</u>, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified  on the attached Service List  either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


　　　　　　　　　　　　　　<u>/s/ Keith A. Goldbaum</u>
　　　　　　　　　　　　　　Keith A. Goldbaum

Thompson v. RelationServe Media, Inc., et al

## SERVICE LIST

Keith A. Goldbaum, Esq.
goldboca@aol.com
Friedman, Rosenwasser & Goldbaum,
P.A. 5355 Town Center Rd., #800
Boca Raton, Florida 33486
Telephone: (561) 395-5511
Facsimile: (561) 368-9274
Attorneys for Plaintiff


Jennifer Jayne Kramer, Esq.
jjk@mdd-law.com
McClosky D' Anna & Dieterle LLP
2300 Glades Road
Suite 400 East Tower
Boca Raton, Florida 33431
Telephone: Telephone (561) 368-9200
Facsimile (561) 395.7050
Attorneys for Defendant Danielle
Karp Served via e-mail


Richard N. Bell
RBell@cohenandmalad.com
Cohen & Malad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Telephone: (317) 636-6481
Facsimile: (317) 636-2593
Attorneys for Plaintiff


Jonathan E. Perlman, Esq.
jperlman@gib-Iaw.com
Bradley J. Kaplan, Esq.
bkaplan@gib-Iaw.com
Genovese Joblove & Battista, P.A.
100 Southeast Second Street, 44th
Floor
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
Attorneys for Defendants SendTec,
Inc. a/k/a RelationServe Media, Inc.
and Warren Musser
Served via e-mail

Thomas J. Fleming, Esq.
tfleming@olshanlaw.com
Olshan Grundman Frome Rosenzweig
& Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Telephone: (212) 451-2300
Facsimile: (212) 451-2222
Attorneys for Defendants SendTec,
Inc. a/k/a RelationServe Media, Inc.
and Warren  Musser
Served via e-mail


Mathew S. Sackel, Esq.
msackel@rra-law.com
Rothstein Rosenfeldt Adler
Las alas City Centre, Suite 1650
401 East Las alas Boulevard
Fort Lauderdale, Florida 33301
Telephone: (954) 522-3456
Facsimile: (954) 527-8663
Attorneys for Defendant Ohad Jehassi